RECEIVED
IN LAKE CHARLES, LA.
JUN 14 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAKE M. THURMAN | : | DOCKET NO. 2:12-CV-2426 |
| VS. | : | JUDGE MINALDI |
| LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Dismissal Pursuant to Federal R. Civ. P. 12(b)(1), 12(b)(6), Peremption, Prescription, and the Eleventh Amendment [Doc. 11], filed by the defendants, the Louisiana Department of Health And Hospitals ("LDHH"), the Louisiana State University Health Care Services Division ("LSU HCSD"), and Dr. Carlos Choucino. The plaintiff, Jake Thurman, timely filed a response [Doc. 21].

## BACKGROUND

This case involves: (1) a medical malpractice claim against LDHH, Dr. Choucino, and Dr. Choucino's employer, W.O. Moss Regional Center;[1] (2) a claim against the Southwest Louisiana AIDS Council ("SLAC") for failure to "advocate [for the plaintiff] in [his] attempts to obtain disability assistance from the Social Security Administration and healthcare assistance from Medicaid;"[2] and, (3) a discrimination claim against LDHH, arising out of the LDHH's

---

[1] W.O. Moss Regional Center is within the LSU HCSD system, and thus LSU HCSD appears as the named defendant.

[2] As the pending Motion to Dismiss does not address any claims against SLAC, the court declines to address the viability of claims against SLAC at this time.

1

denial of Medicaid benefits to the plaintiff.³ Because the plaintiff is proceeding *pro se*, the court will apply a less stringent standard to his pleadings than it would to pleadings drafted by an attorney.⁴ *See Haines v. Kerner*, 404 U.S. 519, 520 – 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

The defendants assert several arguments in their Motion to Dismiss. First, they argue that LDHH, LSU HCSD, and Dr. Choucino are all "arms of the state," and are thus immune from suit under the Eleventh Amendment. Second, they allege that the plaintiff's complaint "sets forth circular allegations against the defendants that do not specify specific dates with specific actions sufficient to set forth a claim for damages." As such, the defendants request either dismissal of the complaint or, at the least, an order from the court that the plaintiff submit a more definite statement. Finally, the defendants seek dismissal of the plaintiff's malpractice claim because, as the most recent allegations of medical malpractice occurred in 2010, and the plaintiff did not file his complaint until 2012, they argue the medical malpractice claim is prescribed. In the alternative, they argue that the plaintiff's claim should be dismissed as premature, because he has not yet submitted his claim to a medical review board.

## RULE 12(B)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v.*

---

[3] While it is not readily apparent from the face of his complaint, in his opposition memorandum to this motion, the plaintiff asserts that he is bringing his discrimination claims under the "Age Act of 1975, the Rehabilitation Act of 1973, and U.S.C. 42 § 1983 [sic]." Pl.'s Opp. to Mot. to Dismiss, [Doc. 21], at p. 1.

[4] Indeed, the majority of the plaintiff's claims are not found in the actual Complaint document, but instead are attached as exhibits. Most of the plaintiff's claims are found in a June 26, 2011 letter the plaintiff sent to the DHH's Office of Civil Rights ("OCR"). *See* Pl.'s Letter to OCR, [Doc. 1-1]. The plaintiff also attached a follow-up letter further detailing his complaints, although a handwritten note at the top indicates that "[t]his letter was not sent to the OCR. It is included for information to assist [with] Complaint." [Doc. 1-1] at p. 14.

*Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

In the Fifth Circuit case *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009), the court held that neither *Twombly* nor *Ashcroft* created a heightened pleading standard for complaints, and that these cases instead only "explicate" Rule 8(a)(2), particularly because *Twombly* recognized that pleading requirements could only be changed through amendment of the Federal Rules. *Id.* at 258 – 59 (citing *Twombly*, 550 U.S. at 569, 127 S.Ct. 1973 n. 14). Accordingly, Fed. R. Civ. P. 8(a)(2) still only requires a "'short and plan statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

3

rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (citations omitted). This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law, provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

Additionally, although a court is generally relegated to the pleadings in deciding a motion to dismiss, the court may also consider documents attached to the complaint and the motion to dismiss which the complaint refers to and are central to the plaintiff's claims. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 – 99 (5th Cir. 2000)). In this case, because the plaintiff has attached and referred to his correspondence with the Office of Civil Rights ("OCR") in his complaint, the court will consider these documents in the instant motion.[5]

## LAW & ANALYSIS

### I. Medical Malpractice Claim under the MLSSA

Parsing through the convoluted documents which together form the plaintiff's complaint, the plaintiff's first claim is for medical malpractice against LDHH, LSU HCSD, and Dr. Choucino. The plaintiff alleges that he was a client of the Comprehensive Care Clinic ("CCC") at LSU HCSD's W.O. Moss Regional Medical Center in Lake Charles, Louisiana, where he was under the care of Dr. Choucino for various medical issues, including HIV/AIDS, hip and back pain, dizziness, headaches, fatigue, depression, and impaired vision.[6] The plaintiff claims he was

---

[5] *See* July 26, 2011 Letter to OCR and April 4, 2012 Letter from OCR, Ex. 1 to Pl.'s Compl., [Doc. 1-1]; *see also* April 5, 2012 Letter from OCR, Ex. 2 to Pl.'s Compl., [Doc. 1-2].

[6] Pl.'s July 26, 2011 Letter to OCR, [Doc. 1-1], at p. 1. The plaintiff also went to the Ear Nose and Throat Clinic in Lafayette to address a nose infection and ringing in his ears. *Id.* Additionally, he went to the ER at Beauregard Memorial Hospital in DeRidder, Louisiana because of problems with gout. *Id.* at p. 2. These two facilities are not named as defendants in this lawsuit.

one of Dr. Choucino's patients from December 2004 to mid-2010, although it is uncertain when the specific complained-of malpractice incidences occurred.[7] While he was initially pleased with the care he received at CCC, he alleges that Dr. Choucino later made poor treatment choices as the plaintiff's health began to decline, adversely affecting his quality of life.[8] The plaintiff alleges that Dr. Choucino also ignored several of his complaints about pain which stemmed from different issues, including injuries sustained from car accidents, various household accidents, and issues with gout.[9] The plaintiff then asserts that because Dr. Choucino provided inaccurate and illegible medical assessments, sometimes having other employees (most often, Bonnie Fruge, a Nurse Practitioner) sign off on these assessments, these inadequate medical records prevented him from receiving Social Security benefits.[10] Because of his problems with Dr. Choucino, the plaintiff sent a letter complaining about the doctor's alleged substandard care on September 30, 2010 to LDHH's Health Standards Section.[11] He did not attach this letter to his complaint or his opposition brief to this motion, but asserts that he has not received a response even though the letter "conforms to the guidelines for submitting a complaint on their website."[12] The plaintiff

---

[7] *Id.* at pp. 1, 6.

[8] The plaintiff's main complaint appears to be that Dr. Choucino took away the pain medication that was addressing his hip and back pain. *Id.* at p. 2.

[9] *Id.*

[10] *Id.* at p. 6. The plaintiff lists several allegedly erroneous findings rendered by the ALJ in the September 9, 2010 decision to deny Social Security benefits. *Id.* at pp. 4 –8. The plaintiff notes, however, that as he has not received a response from the Social Security Appeals Council, the Social Security Administration has not been made a defendant to this complaint. *Id.* at p. 8.

[11] *Id.* at p. 3 – 4, 9.

[12] *Id.* at pp. 3 – 4. At the end of his letter, the plaintiff notes that the LDHH Health Standards Section is liable for failing to respond to his complaint. *Id.* at p. 9.

5

also asserts generally that the LDHH has failed to provide him with "access to quality care [and access to] preventative services[, and] access to rehabilitative services."[13]

While the plaintiff does not plead it as such, his claims fall under the Medical Liability for State Services Act ("MLSSA"), La. Rev. Stat. Ann.§ 40:1299.39, *et seq.*, *see also Batson v. South Louisiana Med. Center*, 99-0232 (La. 11/19/99); 750 So. 2d 949, 956 ("Malpractice actions brought against the state in connection with services rendered by state facilities are governed by the MLSSA. The MLSSA was enacted in 1976 to provide that the State of Louisiana would pay any damages awarded in a medical malpractice suit instituted against certain state-employed health-care providers."). LDHH and LSU HCSD qualify as "state health care providers" under the MLSSA,[14] and Dr. Choucino, as an employee of LSU HCSD, qualifies as a "person covered by [the MLSSA]."[15] Further, construing the plaintiff's complaint in the light most favorable to the plaintiff, the plaintiff's somewhat convoluted and conclusory claims

---

[13] *Id.* at p. 9.

[14] The MLSSA provides, in relevant part:

> "State health care provider" or "person covered by this Part" means:
>
> (i) The state or any of its departments, offices, agencies, boards, commissions, institutions, universities, facilities, hospitals, clinics, laboratories, health care units, ambulances, ambulance services, university health centers, and other state entities which may provide any kind of health care whatsoever, and the officers, officials, and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity . . .

§ 40:1299.39(A)(1)(a)(i).

[15] According to the MLSSA, a person covered by the statute will include "person[s] acting in a professional capacity in providing health care services, by or on behalf of the state, including but not limited to a physician . . . ." § 40:1299.39(A)(1)(a)(ii).

that Dr. Choucino, LSU HCSD, and LDHH provided him with inadequate care which caused him injury, the plaintiff's claims would fit the definition of "malpractice" under the MLSSA.[16]

The MLSSA further provides that:

> [a]ll malpractice claims against the state, its agencies, or other persons covered by this Part, other than . . . claims compromised or settled by the claimant and the division of administration with the concurrence of designated legal counsel for the state, shall be reviewed by a state medical review panel established as provided in this Section, to be administered by the commissioner of administration, hereinafter referred to as commissioner.

§ 40:1299.39.1(A)(1)(a). Further, § 40:1299.39.1(B)(1)(a)(i) provides: "No action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section." Thus, for claims that were not "compromised or settled" with legal counsel for the state, a request for a medical review panel is a necessary prerequisite to filing suit in court. *See id.* Under Louisiana law, if plaintiff does not first submit his claims to a medical review board before proceeding to court, a defendant's exception of prescription will be granted. *Crum v. State*, 41,059 (La. App. 2 Cir. 5/17/06); 931 So.2d 400, 402.

In this case, because it is clear that the plaintiff's medical malpractice claims have not been settled or compromised with the state (hence the lawsuit), the plaintiff must first submit his malpractice claim to a state medical review panel. The defendants argue that the court should find the plaintiff's claims are premature because the plaintiff has not first filed his claims with a medical review panel, as per the dictates of the MLSSA. The plaintiff responds that he filed a complaint with the Health Standards Section of LDHH on September 30, 2010, but that the

---

[16] Section 40:1299.39(A)(4) provides: "'Malpractice' means the failure to exercise the reasonable standard of care specified and required by Subsection B of this Section, in the provision of health care, when such failure proximately causes injury to a patient, as provided in Subsection B of this Section."

7

Health Standards Section never sent a response. Reviewing the Health Standards Section website, it appears that they are not the appropriate department to contact to request a medical review panel. Further, the plaintiff has presented no evidence nor made any claim that he has ever submitted his malpractice claims to a medical review panel, or that a medical review panel has ever rendered a decision on his claim. In the absence of any indication that his malpractice claims have been reviewed by a panel, the court will dismiss without prejudice the plaintiff's malpractice claims as premature.

## II. Discrimination Claim against LDHH for Denial of Medicaid Benefits

The plaintiff's second asserted claim is for age, sex, and disability discrimination against LDHH, who denied his three separate claims for Medicaid benefits in 2004, 2010, and 2011 because, as a 50 year old male with various health problems, he did not fit the criteria to receive Medicaid.[17] The defendants do not make any specific arguments on the merits of this claim, aside from the general argument that the plaintiff's claims against LDHH should be dismissed because LDHH enjoys immunity under the Eleventh Amendment (potentially because it is not very clear under what theories of recovery the plaintiff is bringing his discrimination claim).[18]

---

[17] Pl.'s Summary of Complaint, [Doc. 1]. In his complaint, the plaintiff notes "the Medicaid Program of Louisiana provides assistance to women, children, and the elderly who have low incomes. Many of the same are in perfectly good health. I don't resent anyone who participates in the program. I am a 50 year old man with no income and have a variety of health problems which by all medical standards are life threatening yet I'm denied this same medical assistance. It is my understanding that people are to be treated equally in programs that receive federal funding in all or in part." *Id.* at p. 2.

As noted *supra* footnote 2, the plaintiff sent a letter to the DHH OCR, notifying the OCR of the various problems with DHH and the other defendants. On April 4, 2012, the plaintiff received a letter from the OCR, noting that it would assign different complaint files to the plaintiff's complaints against SLAC, LSU HCSD, and the DHH. On December 3, 2012, the OCR sent a follow-up letter to the plaintiff on his discrimination claim against DHH, finding that there was "insufficient evidence to support a finding of a violation of the Age Act or Section 1557." *See* December 3, 2012 Letter from OCR, Ex. C to Pl.'s Resp. to Mot. to Dismiss, [Doc. 21-1] at p. 7.

[18] While the defendants also make this argument for the claims against Dr. Choucino and the LSU HCSD, the undersigned notes that the claims against these two parties appear to only be malpractice claims under the MLSSA,

8

They also make the general allegation that the complaint is too vague and conclusory to respond to, and that it should therefore be dismissed under Rule 12(b)(6) or the plaintiff should be required to provide a more definite statement under Rule 12(e).

The plaintiff responded in his opposition memorandum that he is pursuing relief for his Medicaid discrimination claim under 42 U.S.C. § 1983, the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975. The court notes that at no point has the plaintiff sought leave to amend his complaint to clarify that he is bringing his discrimination claim under these theories of recovery. Sifting through the plaintiff's complaint, while the attached documents do mention age discrimination under the Age Discrimination Act of 1975, nowhere do they mention § 1983 or the Rehabilitation Act.

The defendants have requested that the plaintiff file a more definite statement under Rule 12(e), and the court finds that, for the plaintiff's discrimination claim, this request is proper. As noted *supra*, in order to survive a Rule 12(b)(6) motion, a plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. at 93, 127 S.Ct. at 2200 (2007). A district court will grant a motion for a more definite statement pursuant to Rule 12(e) when the pleading at issue "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The Supreme Court has noted that "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In deciding whether to grant a Rule 12(e) motion, the trial judge is given considerable discretion. *Newcourt Leasing Corp. v. Regional Bio–Clinical Lab, Inc.*, No. Civ. A. 99–2626, 2000 WL 134700, *1 (E .D.La. Feb. 1, 2000).

---

which does allow suits against state medical providers. The plaintiff's discrimination claims all revolve around denial of Medicaid, specifically by LDHH.

In this instance, on the face of the complaint, it is not readily apparent what theories of recovery the plaintiff is pursuing for his discrimination claim, but the plaintiff has indicated in his opposition memorandum what the theories of recovery are. Because of the ambiguities in the complaint, the defendants were not able to present a targeted argument on whether these claims should survive dismissal under Rule 12(b)(6). Accordingly, the plaintiff will be ordered to submit a more definite statement on his Medicaid discrimination claim, setting forth his theories of recovery for the claim, within thirty (30) days of the issuance of this opinion. The undersigned notes, however, that this order for a more definite statement only applies to the plaintiff's Medicaid discrimination claim, and not his malpractice claim, since it is clear from the face of the complaint that the malpractice claim is premature and must be dismissed.

## CONCLUSION

In conclusion, the plaintiff's medical malpractice claim is dismissed without prejudice as premature, as the plaintiff has not submitted his claim to a medical review panel before proceeding to court as per the dictates of the MLSSA. The court declines to consider the merits of the plaintiff's Medicaid discrimination claim at this time, as it is instead appropriate to require the plaintiff to submit a more definite statement on this claim. As noted *supra*, the plaintiff will be given thirty (30) days from the issuance of this order to submit a more definite statement, delineating his discrimination claim and the theories of recovery for this claim.

Lake Charles, Louisiana, this ___ day of _____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

RECEIVED
IN LAKE CHARLES, LA.
JUN 14 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

| | | |
|---|---|---|
| JAKE M. THURMAN | : | DOCKET NO. 2:12-CV-2426 |
| VS. | : | JUDGE MINALDI |
| LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, ET AL | : | MAGISTRATE JUDGE KAY |

## JUDGMENT

For the reasons set forth in the corresponding Memorandum Ruling,

**IT IS ORDERED** that the plaintiff's medical malpractice claim is **DISMISSED WITHOUT PREJUDICE** as premature;

**IT IS FURTHER ORDERED** that the plaintiff must submit an Amended Complaint, setting forth a more definite statement on his Medicaid discrimination claim, within thirty (30) days of the issuance of this opinion.

Lake Charles, Louisiana, this 5 day of June 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

1